Judge Kaczynski and members of this panel good morning. May it please the court I am Robert Muse from the Thomas Moore Law Center and it's my pleasure to represent the plaintiff's appellants in this case and so I'd like to reserve five minutes for rebuttal if I may. Whatever you have left on the clock if it's a number doesn't have a red thing next to it then it's a left. Now this case obviously is before this court on a dismissal of the complaint under Rule 12 b6 accordingly it is reviewed de novo is reviewed de novo by the panel and it's obviously reviewed de novo by this en banc panel. Upon this de novo review this should be clear the even-handed application of Establishment Clause principles to the facts of this case compel one conclusion and that being an official government resolution that expressly targets the Catholic religion Catholic religious belief for disfavored treatment violates United States Constitution and specifically violates the Establishment Clause of the United States Constitution. Counsel why do these individual plaintiffs have standing and as you answer that would you let me know if you are aware of any case that allows contact with something that isn't a physical object or location is sufficient. Thank you Judge. I think first and foremost with with standing if you look at what the what the core rationale for standing is and that the that the parties who are seeking to invoke this court's jurisdiction that they have such a personal stake in the outcome and I think that the term the courts have used is is a concrete adverseness which allows the issues to be refined presentation of the issues to in to essentially enhance the court's decision-making ability ensure that you have advocates on both sides who have a personal stake who can focus those issues so that they are presented properly for the court. That's not enough. I understand. People feel very strongly about a lot of things the government does very strongly they go on YouTube you can see them you know and but that's never enough. Judge Graber asked you whether you knew of a case where standing has been found in the absence of something like that where you or in an environmental case the forest or you know whatever is at stake and I know I didn't hear your answer to her question yes I think you know the cases that deal with it with insignias on that a part of a county seal. But again that's a physical object what you have here is a I ask the same question slightly differently and that is you want a declaration that the defendants have violated the establishment clause what would that do? Well I think what that would do it would demonstrate that this particular practice and policy is unconstitutional the the resolution itself is still posted. It's a statement in the air I mean what does it have after it was given that it doesn't have now for the piece of paper that is the object? Well one thing you would do Judge Reimers it would it would have it removed from the from the city's official website it's being removed from the official records of the city the declaration obviously is something that's prospective to prohibit this this sort of conduct from happening in the future and in the thing and I and I understand the question with the with the symbols and the seals but what it what is that core with those cases is is what is the message that's conveyed by the symbol? What is the message that's conveyed by the seal? That is what the establishment clause is concerned about. Well it is but but you still have to come into contact with it if I learn that there's something in you know Massachusetts that's on some town's stationery can I and it really offends me can I be a plaintiff because I know about it and it violates the establishment clause and I'm a big establishment clause person? I think the I mean that's getting more towards the Valley Forge where there's here you the individual plaintiffs are members of the particular community. They're citizens that were that this directive was was directed towards it mentioned the citizens of San Francisco but the same have you said about the prayer cases? What is the object of a prayer case? A prayer is something that just sits in the air and I cited that it's a religious ritual that occurs and it's similar I mean there's there's actually something that happens I guess it's tied up in my mind with the regressibility question that Judge Reimer has has raised. There's no display, there's no object, there's no religious event, there's no action that is called for by this resolution and I I guess I may be the only one who's concerned about this but I I don't understand why the plaintiff wouldn't have to be something like the Catholic Charities who are named in the resolution and about whom there are allegations in the complaint that there have been threats to withhold funding they've been concrete actions taken with them. Well it would seem if Catholic Charities and based on that this the question would somehow outstanding then that would then go to the question of well can you have standing for these resolutions we this this court already decided American Family Association and it made very plain that even though it was a non binding resolution had it been binding then we probably would have had a free exercise case. But this issue was not discussed and so isn't it sort of a black letter law that if jurisdictional things are assumed the case doesn't stand for any proposition about jurisdiction? I understand that Judge. The point being that the court has already said though that non binding resolutions are subject to the establishment clause. Now that that's one part of it. The next part is who would have standing of it. If you look at this particular resolution and you mentioned about Catholic Charities it talks about it's an insult to all San Franciscans. It's unacceptable to the citizenry of San Francisco. They talk about the Cardinal Levada who's the head of the Doctrine, the Congregation of the Doctrine of Faith, unqualified representative of his former home city. The plaintiffs are citizens. This is directed, this is essentially saying you Catholic citizens are outside. The plaintiffs are citizens of San Francisco? Yes sir. The plaintiffs are citizens of San Francisco. These are their government officials. Well pursuing your disability, getting just slightly past the point that Judge Graber asked about, which I think you've answered as well as you can. Yes sir. Would you be seeking or are you seeking a repeal? What are you actually seeking? Are you asking us to order the city council to say we were wrong? No, you know, Catholic, you know, everything we said there was wrong. What exactly are you asking? Yes sir. Well certainly. Can the courts do or are you asking the court to do? Yes sir. I mean first and foremost the declaration that what they did was was unconstitutional. They obviously have this policy in practice and where they've gone after... So you want to fight fire with fire? You want us to express a view that sort of negates their view? Well I think it's explaining what the law is. And the law being that the government can adopt as an official policy the condemnation of a particular... Okay, no, that's fine. I'm not asking you to elaborate this reason. I'm just asking you... Yes sir. So you want a declaration that is unconstitutional? Exactly sir. And then... What else could you do? The other thing would be, again, is this is now a part, this is an official resolution. Just like a court would, if it struck down a law, it's unconstitutional. I know what it is. What are you asking? That the resolution be removed, and it's obviously posted on their website as well, that the resolution now be a null and void resolution. Counsel, what do you need that for? If we issue a declaratory judgment that the resolution was an unconstitutional violation of the Supremacy Clause, would we have to do anything else except declare it null and void for that reason? I think, sir, for example, if you had a symbol that was displayed and declared unconstitutional, you would expect them to take the symbol out of or away from the public arena. It's on the public website. That leads to a question I wanted to ask you. Almost all of our Establishment Clause jurisprudence has to do with the government endorsing religion in general or one religion in particular. We have all our giant cross cases. We have prayer in schools cases, prayer at football games, prayer at legislative bodies. The only case I can think of right offhand from the Court where the government was condemning rather than supporting religion was Lukumi, that Supreme Court decision about the Santa Ria religion. But this is Establishment Clause rather than free exercise. Do you happen to have, and the lack of it may just reflect that the U.S. government in America doesn't condemn religion, but do you happen to have a precedent from the Supreme Court or Circuit Court of an Establishment Clause case that's like this, where the government has condemned a religion? No, sir. And that's in — in part and parcel, that's, to me, is part of the problem. When you have — you mentioned the Lukumi case, the Sea of Hialeah case, certainly a free exercise case, the Court in there — granted, this is dicta, but made the point that under its Establishment Clause jurisprudence, there is a principle that the government cannot target one religion for favor or disfavor treatment under the Establishment Clause. Now, granted, it's a free exercise case. When you look at the history, when you look at the cases that you just — you just cited and you went through, that's in the backdrop of a nation that — that has a long religious history, has a history of accommodating religion. And quite frankly, it's almost — this case is a more egregious violation of the Establishment Clause, in my view, than any of these other cases where there was a — found an approval of religion, because we don't have this longstanding history and tradition. In Zuroch v. Clawson, the Supreme Court said, you know, we are — you know, we're a nation whose institutions presuppose a supreme being. Justice O'Connor, when she was talking Elk Grove in the Elk Grove case, said it's unsurprising that a nation founded by religious refugees and dedicated to religious freedom should find reference to divinity in its symbols, songs, models, and oaths. As such, we have, as our national model, in God we trust. We take oaths where we say, so help me God. Some courts open with, you know, God save this honorable court. That's part of our history. It's not part of our history where we target a particular religion for disfavored treatment. Who is this case different from American Family? I think just the nature of the resolution, sir. Was it because it's ruder or what? No, what the court said in American Family is that they didn't view those — the letter and the two resolutions as an explicit criticism of the underlying religious beliefs. There was no inference necessary for that, but even so, she found there was no establishment clause violation. Let me ask if you — go ahead. If the city — I'm sorry, if the County Board of Supervisors had phrased this resolution differently, if they had noted, for example, the Catholic Church's using some of the language it did, respectfully requested that the church reconsider its policy in this regard concerning adoption, would we be here? We probably would, and only because I — and I'll explain. The — if the city wants to make a pronouncement on a particular policy that's religiously neutral —  If the city had a long history of work in the charitable area, particularly to the poor, and noted that there were children in the community that needed families and there weren't enough adoptive parents, and urged the church to reconsider its policy in a respectful way, would we be here? I — we probably would, and I say that because when you have the government — and what's going here is really a core fundamental religious belief. And when you have the government that's taking a position, even if it wants to do it in a kind way to urge that, it's essentially saying that your position is incorrect. If they want to make a religiously neutral statement on policy, that's one thing. But when they — when they — and the thing to back up and look at this directive, this directive was from the Vatican to Catholic Charities, saying Catholic Charities, look, you have to abide by our — by the religious beliefs of the church. This wasn't directed to the city and county of San Francisco. This was an inter-church matter from the Vatican to the city — to the Catholic Charities, a Catholic organization. Except the Catholic Charities had a contract with the city that had a nondiscrimination clause, right? That's right. And so they have to — So why does that make this a little bit different? It's not a resolution in the abstract. It's not a resolution, as many of the other resolutions, where they — there is a component of this in which the city has a contractual relationship with a group that contains a clause that they think may or may not be violated. And certainly they would have every right to rescind that contract if they thought they were violating the city's policies. That's a far different thing than we have here. If you break it up and, for example, if all the resolution said is that, you know, the city supports placement of children in need of adoption with homosexual households, would that be a problem? If the city just said that? Yes. It wouldn't be a problem. Okay. I don't see the — And what if the city went one step further and the city said that the city supports and urges all adoption and placement agencies to follow this policy? Would that be a problem? No problem. What if they said the city urges all religious-based or faith-based adoption agencies whose policy is contrary to the city policy to reconsider? Would that be a problem? I'm not sure. And certainly that's not what we have here. I mean, that's — Well, but — It's far afield from what we have here. Well, if you go one step further, then, and the city has a specific contract with a specific contractor, Catholic Charities, where is the imprimatur of religion, if all you are asking? And if we had only the resolution, not all the whereases, that simply said, you know, we urge the cardinal or whomever to reconsider this policy so that it meets with San Francisco policy, since you're operating in and with the city of San Francisco. Because that's really what the resolution itself says. Why is that a target at religion? Judge, with all due respect, that's not even close to what the resolution says. I mean, it talks about these religious beliefs being an insult to the cardinals. No, I'm talking about the resolution, not the whereas clauses. Just the resolution only. Those are part and parcel of the resolution. They're not separate. They're all part. They're part. Well, I mean, we don't always strike down everything wholesale when we're looking at statutes, resolutions, regulations. So I'm asking about what is, for whatever worth it is, the resolution itself, language, as opposed to the whereases language. Well, the resolution itself is directed at Cardinal Levater as his head of the Congregation of the Doctrine of Faith. They're describing what is a fundamental teaching of the Catholic Church as discriminatory and defamatory. The resolution, as written here, does not comply with the establishment. That's not a religiously neutral statement on policy. And this isn't just policy. It's not talking about transubstantiation or salvation or anything of that sort. I mean, purely religious matters. It's talking about something that's here and now a secular activity, which has to do with adoption of children. And you don't have any dispute if this were the Boy Scouts, for example, for the city council, coming out and saying, we disapprove of the Boy Scouts for their policy on, let's just say something, gays, you know. There's no problem with that. Sir, the Constitution treats religious differently. The same reason why if you put a statute up of Abraham Lincoln. If you ask it to me, you don't have a problem with that, right? That's not. As a secular entity. Right. So, you know, you have a right to association in the Constitution. It's the same First Amendment. It's right next to the religion clauses. And yet government can come down as hard as it wants to an association and say, what you guys are doing is wrong. We disapprove. We urge you to change. Now, this is not a resolution that deals with matters of faith or religious doctrine in the sense that it is purely a matter of between the church and the individual or the church and the individual and God. This has to do with with nuts and bolts matters of how people relate to each other in the community. And in that regard, why is why is the church or any religious organization immune from from governmental criticism any more than any other any more immune than any other organization? Why are they just like the Boy Scouts? Well, I disagree, Judge Kaczynski, with your with your preface. This is dealing with a universal, consistent moral teaching of the church. It goes right to a fundamental core teaching of the church. So this this is a it is a matter of it is a matter of religion. Matthew, you know, you shall not adopt. You shall not let gay couples about this is in the gospels. It's an application of religious teaching to a secular activity. It is it is it is it is just as many other religions have teachings about, you know, you know, Jews say, you know, you're not supposed to ride the streetcar on the Sabbath. And, you know. And so the city of San Francisco, they observe Jews observe the Sabbath Orthodox Jews. They say, you know, we don't have enough ridership on on the Sabbath. And that's because those Jews stay away. You know, and we we urge the synagogues in San Francisco to encourage their constituents to ride the streetcar on the Sabbath. Well, I would say go more than that. We call it we're calling on Orthodox Jews to defy their rabbis because your your policy observing the the the Sabbath is insulting. It's callous. It's discriminatory. It's hateful. That's more like what we have here. Well, the contracting difference, though, is a significant difference, because if we take all the inflammatory language out and said we expect you, regardless of your religious directives, to observe the contract, you really have the same result. Don't you hear you're asking you're asking the contracting party to conform to the contract. And they've had some indication that there might be a breach of the contract because of for religious reason. But that's that's a significantly different resolution that we have here. That's that's not one that's attacking their the core beliefs. If they said you've got a contract, we expect you to abide by the contract. That's not the resolution that we have here. It's amazing you've in the assumption clause and go to Judge Kaczynski's question. It religion is treated differently and is treated differently when the government makes any engages in any speech, whether it be an implied speech through a symbol such as a nativity scene. That's treated differently than if they were putting out a statue of, you know, Abraham Lincoln during President's Day. Those two things are completely different in both cases. Because because a nativity scene connotes endorsement, people walking by City Hall and seeing the crash might think, oh, the city of San Francisco has adopted the Christian religion as its official religion. So it is it is a connotation that goes with it. It is not simply because he's speaking out in a religious manner. You can do it if you have a menorah out there. There are all sorts of ways in which you can disassociate the city from the message. Well, that's but but, you know, it was just something I'm still, you know, I'd like to hear your answer is when you are talking about an activity that the city engages in. These are children, right? Something in which you you do not dispute. I gather that the city and the state have a vital interest in how children are treated by their families, how they are. I mean, you know, child abuse and whether they get a proper education. This is something a proper proper issue for the government to be concerned about. Correct. Adoption of children, making sure that they go to families that care for them and that provide and provide, you know, the right kind of nurturing environment. Perfectly legitimate issue for the government to be concerned about. Yes, certainly. And this is perfectly. This is not a situation where the where the where the government intrudes into a matter where it has no legitimate business and says, you know, we don't really like the fact that you guys genuflect. You know, we think, you know, it offends our sensibilities. This is this is something that deals with a matter that is of serious interest to the city. And as just Thomas points out, as to which Catholic charities have a contract to to to cooperate with the city. Why isn't the city entitled to say, look, this is inconsistent with the way we think children ought to be treated in our community? Because it's a lot more than that. And it's a lot more than that. And you can't get past that. That would have been OK. We wouldn't be here. I mean, is it OK that we have Christmas as a national holiday, that the courts are closed and everything else? Of course it is. That's that's what you're talking about more. You're you're divorcing. You're divorcing the actual language and what's conveyed in the establishment clause. The question is, is it sufficiently likely? Is the message is the government act is the message it conveys sufficiently likely to be perceived as favoring a religion or disfavoring religion? To me, it's utterly implausible that anyone can read this resolution and not reach a conclusion that the message conveyed to a reasonable person is sufficiently likely to be perceived as disfavoring the Catholic religion. Well, how how is that stronger than the example you just cited? That is that Christmas is a national holiday. How is this a more pronounced denunciation of Catholicism than recognizing across the whole country Christmas as plainly a Christian holiday? Why is this more negative than the holiday is positive? Well, they're because I think they treat the well, for example, if they if they said now everybody puts up a correction, I mean, it's a different that's a different issue. Why is it what I'm saying? You can infer and people can infer from any action of government. But government to operate has to have some wiggle room. And why isn't this within the wiggle room that government should properly be allowed, just like Christmas is because the wiggle room ends when it's when it's no longer religiously neutral. And this is this is not religiously neutral that I can't go down on Christmas Day. And, you know, if I let's say I want a deed from the city clerk and I want it on Christmas Day, can't get it. This is why this is the crash on the Grand Staircase. That's what this is. This is an official government resolution. This is the crash on the Grand Staircase. This is not Christmas as a national holiday. This is not some religiously neutral pronouncement on discrimination. This is not some religiously neutral pronouncement on the Catholic Church's requirement to Catholic charities. Just to ask you, I'd like to know the answer. Christmas is not a religiously neutral pronouncement. Having the government shut down on Christmas Day is not religiously neutral. We don't do it on Yom Kippur. We don't do it on, you know, we pick this holiday that that that is holy to some religions, but by no means all. And we, you know, we revere it by not having anybody perform government services. And I'll just ask you, how is what happened here any more negative than is Christmas a positive towards Christianity as a whole? And sort of a, you know, sort of a diss of all those other religions? It goes, I think, Judge Kaczynski, to the point that I made before, that we have a long history as a long history of accommodating religion in this country. We don't have a similar history. In fact, this is, it's almost perverse. We've got things reversed. We're striking down longstanding traditions that we've had, you know, from our finding, based on even some of this, you know, the latest interpretation of the Establishment Clause, a Declaration of Independence, which mentions a creator, would be, would violate the Constitution. We acknowledge. But that gets you back to Judge Graber's question. You know, the Declaration of Independence is there in the air, you know. It doesn't do anything. How is anybody, let's say somebody wanted to say I'm offended by the Declaration of Independence because it talks about a creator. That backs you right into Judge Graber's question. What can we do about it? Counsel, help me with something that Judge Kaczynski raises. Yes, Judge. I found it interesting. I think I know the answer to this part of my question. But I found it interesting that this was pleaded as an Establishment Clause and not a Free Exercise Clause case. Yes, sir. Now, the resolution tells this Cardinal in the Vatican what to do, and then it tells the Archbishop in San Francisco what he ought to do, as well as telling Catholic Charities what to do. It tells the Church Cardinal and Archbishop what to do. And then it has all the negative talk about the Inquisition and foreign country and all that. Yes. And why isn't it pleaded as a Free Exercise Clause? And depending on what we do with American Family and what the majority view of this panel turns out to be, is there a possibility of an amended pleading raising Free Exercise Clause? I don't think so, Judge Kleinfeld, because American Family made claim that the non-binding resolution didn't raise a Free Exercise Claim. So I read the cases and the precedent, understanding that there's no precedent for a Free Exercise Claim. Because typically with Free Exercise – That's why I thought you did not plead Free Exercise. But, of course, you don't know and we don't know what we'll do with American Family. I understand, sir. If the contract has a non-discrimination clause in it and anybody who contracts with the city with respect to child services needs to include homosexual adoption and the city cancels that contract with Catholic Charities, is that a violation of the Establishment Clause? Violation of the Establishment Clause? Judge, I'd have to think through that, that issue. Because here – and I wanted to finish, Judge. Well, but I – no, I just want to finish up, though, because you – if that might not be a violation of the Establishment Clause, this is just a shot across the bow to say, look, try to change your policy or we're probably going to cancel you. So, I mean, it's – it goes back to, doesn't it, that they did it in a nasty way instead of a businesslike, we're going to cancel your contract. And so they're giving them as a sort of like fair warning, albeit in a strong language. So I want to know what's the difference between the two. All right. And I know my time is going to be up here in a couple of seconds, if I may be able to respond to finish the question, because it ties into what Judge – what Judge Kleinfeld said. The Free Exercise Clause requires some measure of coercion. And we know that this is a non-binding resolution. The Establishment Clause deals with government speech. And when the – and through the messages that are conveyed through the government speech, it's a – it's a different message. And if they – if they had a non-discrimination clause as part of the Catholic Charities doing business with Catholic Charities and Catholic Charities says, well, based on our religious beliefs, we can no longer contract with you, so we're going to have to get out of the adoption business. That's one thing. When you have the government then passing an official resolution saying, because of your – your insulting, callous, discriminatory, inane – I mean, you go through the whole religious belief, you ought to change what your particular policy is. And we're – and it's not just policy. It's a religious – it's a fundamental religious belief. That – that raises the Establishment Clause concern because it's addressing government speech. The same way an implied message from a nativity scene or implied message from any of these other symbols – and a symbol is only a symbol because it – because it has a message assigned to it. This, we don't have to guess or surmise at what the message is. This is very expressly stated, and thus it is a violation of the Establishment Clause. And I know I've gone over my time, and I – thank you. I have a quick question. Yes. If you don't mind and if you can give a yes or no, that would be great. Do I understand that it was a deliberate decision not to plead pre-exercise and that even if this case was remanded, you would not amend the pleading to state such a claim? Well, Judge, in light of American Family, it made very plain that that's not a pre-exercise claim. So unless this Court, you know, rules some other way that can give me a good-faith basis for – for doing so, American Family is right on point on that issue. And like I said, I – I try to follow what the circuit's precedent is on how I plead subsequent cases. Okay. Thank you. Let me ask you a question. The County. Good morning, Mr. Chief Judge, members of the Invent Court. Vince Chabria, Deputy City Attorney representing the city and county of San Francisco. I think that Mr. Mews's response to Judge Hawkins' question early on sort of underscores the fundamental problem with the League's presentation. Excuse me. Could you speak a little louder? Forgive me. Thank you. What I said is that I think that Mr. Mews's response to Judge Hawkins' question early on underscores the fundamental problem with the League's presentation in this case, which is that the League seems to assume that if the government criticizes someone's religious belief, that only begs the establishment clause question. We have religious beliefs of all different shapes and sizes. Someone might believe that multiple gods exist. Somebody might believe that the hungry must be fed. Somebody might believe that abortion clinics must be blocked. Somebody might believe that the United States should be bombed because of its relationship with Israel. The question that the Establishment Clause jurisprudence requires the Court to ask is, what is the government's stake in this? Does the government have a secular stake in this matter? And would the reasonable observer of it? Counsel, that seems to me like a very distorted approach. I don't think there is a Supreme Court case that says the question in Establishment Clause jurisprudence is whether the government has a secular stake, nor is there any substantial burden test in Establishment Clause jurisprudence. That's all free-exercise jurisprudence. A neutral law of general applicability does not violate the free-exercise clause because it places a burden on one or another religion, even though the burden may be significant religiously. But in Establishment Clause cases, nothing that you've said fits any precedent I can think of. All the precedents are in language, well, like Wallace v. Jaffrey, the football game, prayer. The Supreme Court says whenever the state itself speaks on a religious subject, and that's all it takes is speaking with no effect, no consequence, no coercion, no interference, just speaking. The idea that the Supreme Court has told us over and over again on the Establishment Clause side is that all it takes is an indication of endorsement or counter-endorsement, anything other than neutrality or mere speech in the air to violate the Establishment Clause. So I don't understand what precedent your remarks are addressed to. Well, I may have not articulated it properly, but I was referring to the Lemon Test and all of the cases that come after Lemon, which asks... Okay, let's talk about Lemon. Lemon says purpose, effect, and entanglement. Now, the purpose here is certainly to address religion because the resolution does just that. The effect is under Lemon. That means, as the Supreme Court put it, the principal or primary effect must be one that neither advances nor inhibits religion. Well, this one sure doesn't advance Catholicism. It would seem to inhibit Catholicism. I would think you'd have to be kind of cautious about driving your car to Mass where a lot of people are going to see it and then see it in the city parking lot if you work there or come to work for the city government with an ash on your forehead on Ash Wednesday. I may be getting some of those Catholic words wrong because I'm not Catholic, but I remember the people coming to work with the cross on their heads. And on the entanglement, what can be more entangling than telling the Vatican what they should tell the local cardinal and telling the cardinal to defy the Vatican and telling the cardinal that he should remember that what he's hearing from here is the office formerly known as the Holy Office of the Inquisition to disobey his superiors in what I understand to be a very hierarchical church. So if what you were talking about was Lemon, I don't understand what you're saying about Lemon. Well, let's take each prong one at a time. And first, just as a preface, let me say, Judge Kleinfeld, that we don't for a minute question the plaintiff's assertion that they were disturbed by this resolution. And I'm not here to defend. I'm not here to say that this is the way the board should have written the resolution. Usually that's pretty important in an establishment clause. If I'm disturbed by a cross on a hill in New Jersey, I don't have standing to challenge it. But if I'm disturbed by a cross that I drive past every day that's posted on a government building or creche on the government steps, I do have standing. That's what an establishment clause law is. That's not correct, Judge Kleinfeld, with respect. Many people are disturbed and offended by the fact that in God we trust is written on our currency. But the fact that they are offended by that does not mean that it violates the establishment clause. So you think all our Ninth Circuit law about giant crosses is mistaken? No, I – well, I have personal views about that. One case, of course, was, you know, a simple one. We have a bunch. But one was involving the city and county of San Francisco, which, of course, fought tooth and nail to keep a cross up atop Mount Davidson here in the city. But the point is that not – there is no – there is not – Do you think the Supreme Court creche case is mistaken and the Supreme Court prayer at graduation is mistaken and the Supreme Court prayer at football game is mistaken?  No. My – what I think is mistaken with respect is Your Honor's assertion that whenever somebody is offended by government speech, the establishment clause has been violated. It is clearly not. You have to apply the lemon test. And so doing that, with respect to the government – Well, let's assume we have a different resolution. Let's assume the resolution, instead of talking specifically about what is arguably a government contract, just urges all people in San Francisco not to do business with Catholics. Do we have a different case? I think that would be problematic. Again, applying the lemon test, you might still say, I suppose, that – But it's nonbinding, arguably. It's less government entanglement, arguably. But it's more direct and more arguably discriminatory. Yeah. I mean, I think if you applied the purpose test, you would have to – the purpose prong, you would say, no, the purpose is still the same. The question you would have to ask is, under the effect test, would a reasonable person conclude that the San Francisco Board of Supervisors is condemning religion and attempting to inhibit religion? And I think that – Could you go to the effects test, then? I assume that you are defending not only the, in effect, bold-faced language of the – Yes. And I take it from your – some recitation about lemon and the other cases that you would agree that one thing the Constitution prohibits is an official hostility to religion. Is that a fair statement of the Supreme Court cases? We would not dispute that the Establishment Clause also prohibits hostility, as it does favoring religion. How, then, would one take a sentence such as the where is clause about the Cardinal and the Vatican taking a certain position and saying that that position and statements are absolutely unacceptable to the citizenry of San Francisco, and then going on to say that the Cardinal is a decidedly unqualified representative of his home city and the values they hold? And we know that the Cardinal holds those views because he's an official – well, he's a Catholic, of course, and he's an official representative of the Catholic Church. How would not those statements be viewed as hostile to the Catholic religion? Because I think under Establishment Clause jurisprudence, we don't parse out individual phrases. We look at the resolution of the whole and we look at the context. And if the board had made a statement like that regarding a belief expressed or directive issued by Cardinal Levada reminding members of the church to take communion or a belief expressed by Cardinal Levada that Jesus is the son of God or something in which the government has no significant secular stake, then that would constitute a violation of the Establishment Clause. Well, why do they have to have – I mean, they go – that's just a couple of the sentences. They also say that this view in effect shows insensitivity and ignorance, which has seldom been encountered. It says a level of insensitivity and ignorance. So if you take all of the whereas clauses and you put them together, aren't they in effect condemning the Catholic Church's beliefs? No. I believe that they are expressing disagreement with the belief about same-sex couples and adoption and homosexuality. But to say that they are condemning – I disagree with the suggestion that they are condemning the Catholic religion. Well, but you don't have to – the Establishment Clause doesn't say you have to go after the whole religion. You can go after, in this case, one particular belief that is religiously based and still have a violation of the Establishment Clause. Well, I mean, I guess that gets back to my original point, which I think it really begs the question, what is the subject matter that the government is speaking about? And the reason – How could the subject matter be anything other than what the resolution starts off by saying it is, which is to urge Levada to withdraw his discriminatory and defamatory directive? I mean, that's what the resolution itself says it is about. And I agree with that. The resolution urges him to withdraw his discriminatory and defamatory directive to archdiocese to stop placing children for adoption with same-sex couples. Campbell, I think I see the problem here. I think you're speaking with the implicit assumption that the city government, the government is not addressing religion unless they talk about God and communion and theological subject matter and not social teachings. But most religions in the Western group of religions have extensive social teachings. Christian churches do, and, of course, Exodus, Leviticus, and Numbers kind of lay a foundation for extensive social teachings as well as the prophets. My gosh, that's what Western religions speak to in large part. I think you're saying as long as the church condemns a religion because of its social teachings and disregards its theology, that's okay. No, I'm most definitely not saying that, Judge Kleinfeld. I think Madison told us long ago, and the courts have adhered to it, that the government and the courts cannot get in the business of deciding what is quintessentially religious and what is not. What I am saying is something very different, which is that there are many subjects in society today, particularly in recent times, that are both secular and religious. That the government has a significant secular interest in and that religious organizations or entities consider to be part of their religious beliefs. But if they didn't want to condemn a particular religion, Roman Catholicism, and all they wanted to do was address the subject that the government has a secular interest in, they could have just said that we resolve that homosexual adoption is just as good as heterosexual, well, just what they did in, what is it, the fourth whereas. Whereas same-sex couples are just as qualified to be parents as are heterosexual couples. That doesn't raise any establishment clause issue at all, as your opponent conceded, even though it's contrary to Catholic teachings. But they didn't do that. But the reasonable observer would know that the reason that this resolution was directed at the Vatican is because the Vatican directed a policy position to San Francisco that had a significant impact on the well-being of the people of San Francisco. So it's okay to address and condemn a particular religion if that religion has had an effect on the well-being of the citizens of San Francisco. I would disagree with the initial premise of Your Honor's question because I don't believe that this resolution represents condemnation of the Catholic religion. It represents sharp criticism. Can I ask you, about this issue that you're raising now of responsiveness, do I understand your argument to be that if a religious entity or person enters into the public debate on an issue as to which there is public policy or legislation of some sort, then the government is free to answer back? Is that your theory? And if so, how do we measure the answering back? I'm not sure I made the question clear. But if the Church had been silent and this resolution had passed, you were suggesting that it came about because it was a response to a statement already made on the same subject matter. Does that matter to the analysis? Well, so to answer your question, for example, what if San Francisco had enacted this resolution in response to the 2003 considerations document that the Vatican issued that was not directed at San Francisco, rather than not responding to that but waiting until a directive was issued in 2006 regarding same-sex adoption by same-sex couples? I think that if a religious group, it's a slightly more difficult case, but I think that if a religious group makes a pronouncement on a matter of public policy, a public policy that a governmental entity has an interest in, the entity has the right to respond. I think that when you look at the language of this resolution, it becomes a little more important to consider the context and to understand that the reason that the Board spoke so loudly is because it was reacting to an attempt to influence policy outcomes on a matter near and dear to the hearts of the elected representatives of San Francisco in the city of San Francisco. What's the precedent for your right of response argument? I had understood the law to be, as the Supreme Court said in Church of Lukumi Babaluwabe, the First Amendment forbids an official purpose to disapprove of a particular religion or religion in general. But I understand you to be saying there's an exception to that for right of response if the religion has adopted a position that is directed at a particular, the citizens of a particular government. That's not what I'm saying. First, what I said in response to Judge Graber's question is that it's not limited to a right of response. But to respond to your question, the government, I mean, I'm not sure if I can add anything to what I've said in my presentation, but the precedent would be helpful. Well, again, if you're asking me whether there is a Supreme Court case in which the government has criticized a religious belief and the court has either held that it violates the Establishment Clause or not, the answer is no. I would say, I mean, you've made reference to the city of Hialeah case a couple of times, and I would say, you know, in that case there were a number of resolutions denouncing the practice and then there were a series of ordinances denouncing the practice, and the ordinances were sort of gerrymandered to only get at that particular church's practice and to avoid getting at anybody else's practice that might have fallen within a more generally applicable provision. I think, I mean, my personal opinion is that if you took away the ordinances in the city of Hialeah and you just had the resolution, putting aside for a moment standing questions, that in that case it may still have constituted a violation of the Establishment Clause under the Lemon Test because the purpose appeared to be to, from what I gather from the case, and of course the Court didn't engage in this precise analysis, but what I gather from the case is the purpose was to target this particular religious practice to the exclusion of other potentially similar religious practices, and that therefore the government didn't have a significant secular stake in that. It's certainly different from our case. The law there in Hialeah was you can kill chickens anytime, any way you want as long as you don't do it in the course of practicing the Santa Ria religion. That's right. And that is different from our case, but the explanation for why they decided as they did would seem to be applicable to our case, and I'm trying to find what precedent you have. And you can see that there is no Supreme Court precedent. Is there circuit court precedent for a resolution condemning a particular church as this one did and the circuit court deciding that it does or does not violate the Establishment Clause? Well, again, I have to dispute the premise of your question, Judge. Well, look, I can read as well as you can, and you think there's nothing wrong with it, and I think, gee, if I was a Catholic, it would really bother me to have all this stuff about how a foreign country like the Vatican is meddling and it's the Inquisition and the Holy Office of the Inquisition and the archbishop should disobey the cardinal. If I were Catholic, my guess is I'd be really offended when I translate it into analogous statements about Jews, and it really would upset me a great deal. I have a little. So I can't really accept the premise that it's just an inoffensive discussion of public policy not directed at a particular church. Taking it to be a resolution directed at a particular church and connoting a message to the public of governmental condemnation, is there a circuit court case that says whether it is or is not an Establishment Clause violation? Well, there's American Family, but that wasn't directed at it. That's our court. Right. And it's a different resolution, as they said. Right. And, of course, we're sitting on Bonk, so whether we adhere to it or not is something we'll think about. That actually leads to my question. The last time the city was in on a resolution like that, it was in front of a panel I was on. In fact, I wrote American Family. And we apologize for taking so much of your time. That's all right. The supervisor's been busy. Here's my question. The resolution in American Family was addressed to political organizations, the Religious Right, which I guess you'd describe as a political movement, the Family Research Council, the Concerned Women for America, the Center for Reclaiming America. No church is mentioned. In fact, the only time any derivative of the word religion is used is in the description of the Religious Right. There's certainly no specific mention of the Catholic Church. What do we make of that difference? Or what should we make of it? I think that's a distinction without a difference. I mean, I don't understand why it would matter if the government is criticizing particular groups' religious beliefs, whether it's the Christian Legal Society or American Family Council or something like that. But the resolution in American Family doesn't criticize these groups for their religious beliefs. It criticizes them for taking a position that the city disagrees with and doesn't mention religion, does it? Well, it does. Actually, the city's speech in American Family did mention religion. One example is, I believe, the Cat's Letter said, When religious organizations like yours make statements like this about the ease with which homosexuals can convert, this contributes to violence against lesbians and gay men along the lines of dramatic shepherdism. But it did not deal with religious doctrine. And what it was talking about is organizations, including religious organizations, speaking out on political matters. Is there any doubt that this resolution was intended to, or could be reasonably interpreted to cause church fathers to change their advice or guidance, religious teaching to their parishioners as to the matter of homosexual adoption? I don't think it's correct to say that the American Family case didn't deal with religious doctrine. Okay, I understand. Why don't you answer the question I asked. Is there any doubt that in this case, this resolution was intended, or could reasonably, could rationally be interpreted as having been intended to cause the church, officials in the church, to change their religious teaching? Well, I mean, I don't know. This might be quibbling. Don't quibble. I think that there's no doubt that the resolution was designed to get officials in the church to retract what they told the archdiocese. Okay, you're just restating my question. Well, that's why I said I may be quibbling. You're agreeing that it is. I mean, there's no implication, and I don't think that they were doing this, this teaching was based on anything other than their interpretation of Catholic religious doctrine. I agree with that. We're on the same page here, right? Yes. And the city council of San Francisco is trying to get church officials, and again, like Judge Kleinfeld, I'm not that familiar with the hierarchy of the Catholic church, but it's a hierarchical organization, and they were trying to get somebody fairly high up in the hierarchy to change the teaching that they give to parishioners, people underneath them, charities, individuals, about the religious correctness of having homosexual couples adopting children. Well, okay. Are we agreeing on this? We're on the same page, more or less, yeah. I guess my response to that is similar to... I'll let you say what you want to say in a minute, but I just want to make sure we're on the same page on this. We're on the same page. So the city council of San Francisco is now telling a religious organization how to practice its religion. That's where we are. You and I agree that that's what the city council... Board of Supervisors. I'm sorry. Same body. You know what I'm talking about. I have to qualify. They are telling them how to practice Catholicism. Well, I mean, I have to qualify it to a degree. I think that general... You agree with me to some degree. Yes. I agree with you to some degree, but I think it must be... Here's a sort of punchline. Okay. You think it is permissible under the Establishment Clause for secular government entities to tell religious organizations how to interpret religious doctrine? No. I think it's permissible in some... Why have you just given up your case? No, I think it's permissible in some instances, depending on the context, for the government to urge high-level church officials to withdraw an order to church members or to urge church members to disregard an order from the church. And let me give you a couple of examples. I'm not speaking about disregarding, the disregarding part. We can talk about that, and I'm sure some of my colleagues have questions. I mean, you know, we've talked about that. But I don't want to focus on the disregarding part. I wanted to focus on the part where they say, we want you to withdraw and countermand and rescind your teaching on this subject. Is that really any different than having the Board of Supervisors tell Passover Resolutions, saying we want the church to teach that Christ was not the Son of God and that you cannot gain salvation by accepting him into your life? Very different, very different. How is that different? Because of the lemon test. And, again, we cannot judge. No, no, I just mean it as a nuts and bolts, real-life question of what people are ordered to do, not as a matter of legal doctrine. Very good. How is it different having the city council say, we want the synagogues to tell people it's okay to eat pork, or it's okay not to use phylacteries twice a day, or any number of issues such as those? Why can't the city council of San Francisco then go into the business of ordering all sorts of religious organizations to change their doctrine? Buddhists no longer need to eat. Hindus can eat cow. So, you know, whatever comes into their minds to disagree with. I think that if San Francisco orders the Vatican to stop teaching what it is teaching about adoption by same-sex couples, if San Francisco urges the Vatican to stop supporting Proposition 8, if San Francisco urges... No, Proposition 8 is a political matter. Here, the Church is teaching, as I understand it, and, again, I'm not a Catholic, so I can't, you know, but as I understand it, what they're saying is, look, as a matter of Catholic doctrine, but as a matter of our religion, as we understand your relationship to God, you are not to participate in putting children in a situation which we, as a matter of religious conviction, believe puts them in moral jeopardy of their souls. But your question... That's what they're teaching. The burden of supervisors was to say, no, you go ahead and tell them it's okay. Your question underscores why the Court cannot find this to be an Establishment Clause violation, because the Considerations Document from 2003 instructs members of the Church, Catholic politicians, members of the archdiocese, to oppose any effort to grant equal recognition to same-sex couples and to support measures with full force, like Proposition 8. And so the problem with your question is that you are trying to distinguish, as a judge, between what is central to the Catholic Church's religious belief and what is political rather than religious. And courts cannot do that. The court has to ask, what is San Francisco's stake in this? Why is San Francisco doing what it is doing? If it urges the Vatican to refrain from teaching that Jesus is the Son of God or something like that, San Francisco has no secular purpose, no secular stake in that. With respect to something like Prop 8, and so it's not, it's from the perspective... I'm not saying you, but what did the burden of supervisors think? Well, those people are wasting their time in church by worshipping Jesus. They really should be doing, spending their time for their moral betterment, doing good works in the mission. You know, that's their view. Well, I would say that if a government came to a court attempting to defend that as legitimate under the Establishment Clause, I think it would be pretty clear that the asserted purpose, whatever asserted secular purpose there is, is a sham, and the intent is to undermine religion. And so I think that that most certainly would be an Establishment Clause violation. There being no apparent further questions, thank you. Thank you. I think you are close to out of time. We'll give you a minute for rebuttal. Or maybe you are out of time. I'll be very brief and very quick. First of all, this is a theological issue. It really is. In the Catholic faith, we refer to it as a universal, consistent, moral teaching. It's grounded in Catholic tradition, and it's founded in Scripture. And how we know that? The directive that was issued was issued from the head of the congregation, the Doctrine of Faith. I mean, that's his particular position is to ensure that Catholic entities are abiding by what is required by the faith, by the Catholic faith. And remember, the directive that was challenged by the Board of Supervisors was a directive not to the city of San Francisco. It was a directive to Catholic charities and Catholic organizations saying, you've got to abide by our theological, our theological teachings. This goes right to the core of a theological issue in a religious belief. It's not a political matter. And Judge Hawkins, you mentioned about American Family Association. Based on the reasoning of American Family Association, why they found those resolutions in that letter to be not or to be in compliance with the Constitution, the reason why this violates the Constitution, because this is a specific condemnation and criticism of religious beliefs as opposed to those that were at issue in American Family. And I understand that obviously the panel is not bound by American Family, but the reasoning in American Family is the reason why this case should be, the outcome of this case should be different than the outcome in that. One last point I want to make with regard to the standing issue. And I think this goes to the point, and I cited from the D.C. Circuit case, NRA Navy chaplaincy in my letter brief. And they said, quote, in the religious display and prayer cases, and again, a prayer isn't something that's physical. It's something that disappears. It's ephemeral. It's in the air. The government actively and directly communicates a religious message through religious words or religious symbols. In other words, it engages in religious speech that is observed, read, or heard by the plaintiffs. For the same reason that a person would have standing in those cases, the religious display cases and the prayer cases, dealing with the question of government speech, is the same reason why the plaintiffs in this case, who are members, who are citizens in the city and county of San Francisco, would have challenge to standing, to challenge this particular resolution. And the Supreme Court said the clearest command of the Establishment Clause is that one religious denomination cannot be officially preferred over another. That's Larson v. Valente. When you're attacking one particular religion, you are, in fact, making that preferential treatment. And I think it would be an odd rule that somebody would not have standing to challenge that. Thank you, Your Honor. Thank you. Thank you. Thank you. Thank you. Thank you, counsel, for a final argument.      Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you.
judges: Hug, Paez, Berzon En Banc Panel: Kozinski, Rymer, Kleinfeld, Hawkins, Thomas, Silverman, Graber, McKeown, Clifton, Bybee, Ikuta